1225 Lakin Industries v. Linzer Products Corporation I'm on some medication that makes me very dry, so I'll take some water with me, if you don't mind. May it please the Court, we represent Lakim Industries, which is also called by its DBA name Qualitech, and we'll use that name in this presentation. As an initial matter, what I would like to talk about is the fact that this is a mounting assembly. The claims call for a mounting assembly, not for a full-formed roller. We contend that the phrase, upon which the paint roller is mounted, is not a true element of the claim. And if you look at the claim, you'll see that it has several very important commas. The first comma is in the preamble, where it says, a paint roller mounting assembly, comma, adopted for receiving a shaft of a paint roller handle. Can you point us to the column and line that you're reading from? Do you have that in itself? Yes, thank you. I'll have to get that. I'll be calling four line five. So, the preamble uses a comma to separate, adopted for receiving the shaft of a paint roller handle, which is the purpose for the mounting assembly. Then you have an outer cylinder, comma, upon which the paint roller is mounted. Well, again, that comma separates the outer cylinder from the purpose of the outer cylinder, in other words, to mount a paint roller. This phrase is important, but if you refer to the argument that's been made by Linzer, you'll find that he misquotes that line. If you go to page 30 of his brief, you'll find that he leaves the comma out. What's the point here? What's the point? I mean, the district court found the outer cylinder, if I recall correctly, was a claim limitation, right? And it says that the paint roller had to be mounted on the outer cylinder. Yes, and I will certainly show why that's not true. Why is that not true? Because you have to define what a roller is, a paint roller. Let's assume for a moment, if you'll indulge me, that we take the word paint out of the claims, right? So, what we wind up having is a roller mounting assembly, adopted for receiving a roller handle, an outer cylinder upon which the roller is mounted. Well, you can have several types of rollers. For example, if you were to be applying ink to a surface like you would in lithography, then you would call it an ink roller. If you have, as we have, the desire to apply paint to a surface, you would then call it a paint roller. It's a roller, and so it's not a paint roller. So, if you went into a store and you said, I want to buy a paint roller. He'd give you something that looks like this, especially a mini roller, which has a handle. So, obviously the word paint roller doesn't mean, in this context, that you actually have a handle on it. Because if you did that, then you'd have to mount this paint roller with a handle on top of the core. And that doesn't make any sense. It makes it absurd. The only way this claim makes sense is if the roller is referring to the fabric. Now, the way these things are made is, in fact, you take a very long tube, a very long cylinder. It could be a plastic. And you also have a very long strip of fabric. And you have some glue, and you put that, you spirally wound the fabric around this long tube. And then you cut it up, after it's fixed, into pieces. Each of these pieces then constitutes the roller. So, what is a roller? If you look at the catalogue, at Linzer's catalogue, you'll find that even when you're talking about his roller, it comes with a handle. So, obviously, when you're saying roller, you have to refer to a dictionary definition. So, a dictionary definition of a roller is a cylindrical body rolling over something to spread it out. Nothing in the definition of a roller, nothing in the claims, nothing in the patent, requires that that roller have a core. It's a roller. It doesn't mean that it has a core. Nothing in the dictionary definition, or anywhere, says it has a core. Now, it has to be cylindrical. So, you say, how is it cylindrical? It's cylindrical because when you roll it on that cylinder, you're causing it to be cylindrical. It has a cylindrical form. So, the word roller is really just a fabric in cylindrical form. And it is, in the accused device, exactly that. So, there is actual direct infringement. Now, if you don't accept that explanation, and you say the roller must have a core, which, of course, it doesn't, but if you say it must have a core, then we have the doctrine of equivalence. The doctrine of equivalence was not applied appropriately by the district court. What the district court did is it took the doctrine and applied it to the outer cylinder. It said the core is not the equivalent of the outer cylinder. Well, of course it's not. It's the identical to the outer cylinder. The outer cylinder is identical to the core in every respect. Excuse me for a moment. So, if the outer cylinder is identical to the core, what do you have left? You have the only, what you have is an equivalency of the fabric to the roller. If you're going to say that roller has a core, then you must say that under the doctrine of equivalence, the fabric is equivalent to that core, to that roller having a core. And that's the proper application of the doctrine of equivalence. Now, this case came off a summary judgment. We were given a week to respond to the brief, and we believe that in no case does this case arise if the court were to find, for some reason, that it agrees with the court below. We believe that there's no way in which it can be found to be in bad faith. We have a very legitimate explanation as to why, even under literal infringement, this patent is being infringed by the structure of this particular roller. And certainly under the doctrine of equivalence, I don't think there's any question that it's infringed. So there's no bad faith in bringing this case, and certainly no objective, no basis on which you can say that it was objectively unfounded. I hope there's any questions that you may have. Thank you, Mr. Boone. You can reserve the rest of your time. Mr. Lindenmaier. Good morning. May it please the Court. This case is exceptional. Rather than compete fairly with its competitor, Qualitech sued Linzer, accusing it of infringing two patents when it was obvious that they were missing key elements from the patents that weren't found in the accused products. The Court's finding of non-infringement, based on the claim of literal infringement, was correct and straightforward. The 963, and all claims of the 963, require that a paint roller be mounted on an outer cylinder, a distinct cylinder that's referred to as an outer cylinder in the patent. Am I incorrect, though, that with regard to DOE, the District Court didn't even deal specifically with one of the arguments on DOE? I don't believe so. I think the District Court did make some additional arguments, but throughout its opinion, it clearly says that the fabric alone, which is what Qualitech intends must be the paint roller, that the fabric cannot serve the function of a paint roller because it doesn't have the rigid inner core. It doesn't have that core, which without that, it cannot serve the function of rolling paint onto a surface. So I think the District Court, in making that finding, in fact, demonstrated that the doctrine of equivalence could not apply in this case. Attempting to overcome the missing element, because in this case all claims require that the paint roller be mounted on this separate cylinder and the accused device doesn't mount the paint roller directly onto a cylinder. Instead, it mounts it onto a part that's similar to what's referred to in the patent as the end piece. So without this cylinder, Qualitech argued that if you break apart the paint roller into two components, cylinder on one hand, which is the inner core of the paint roller, and the fabric on the other hand, the inner core of the roller can meet the requirement of the cylinder, but the District Court correctly rejected this argument. Not because it didn't find that the inner core of the paint roller couldn't meet the limitation of a cylinder, but because once you remove the cylinder from the fabric, you're left only with the strip of fabric, and the strip of fabric did not meet the District Court's construction of a paint roller. Is there something in our precedent that suggests there has to be a one-to-one correspondence between the elements in the claims and the elements in the accused device for DOE? Namely, what I'm suggesting is, is it possible that two different claim elements could be satisfied by a single unitary structure in the accused device under the doctrine? Not literally, clearly, but under the doctrine. Right. In some cases, yes. In this case, no. That's because in this case, the patent requires a positional relationship between the paint roller and the outer cylinder. So in order to infringe, you have to have separately the paint roller and the outer cylinder. So the patent requires two cylinders. I understand you say the patent requires two cylinders, and you say that by virtue of the language, an outer cylinder upon which the paint roller is mounted, right? Correct. Okay, so why can't a single cylinder with fabric be an equivalent of this limitation, an outer cylinder upon which the paint roller is mounted? Because the patent requires that you have an outer cylinder and that you then mount the paint roller onto that outer cylinder. If you use the inner core of the paint roller to satisfy the outer cylinder, then what you're left with is just paint-retaining fabric mounted onto the outer cylinder. Because it requires that a paint roller, which has been construed to mean a cylinder that has paint-absorbing fabric wrapped around it, that piece has to be mounted on the cylinder. You have to have both a cylinder in the paint roller and the outer cylinder. If I were to adopt that logic, then it would seem to fly in the face of the cases where we allowed, under the doctrine of equivalence, an accused device with a single element that satisfies two limitations in the claim, and we do have such cases. So how do you justify the difference here? Because, of course, as you know, as a matter of claim drafting, you have to explain the structural relationships between the components. So every claim must do that. If you've got two components articulated, you have to explain how they work together as part of the unitary structure that you're claiming. So I don't know, are you making a vitiation argument maybe? What is the basis of your claim for why exactly DOE is not just unwinnable, but objectively baseless in this case? Right, well, I think it's both. I think it's in its very nature, because it requires a positional relationship, that it's not just we have an outer cylinder and we have a paint roller. We have not only those two elements, but we have the language that says they're connected in a certain way. The one is mounted on the other. So to have it as just one cylinder, in essence, it vitiates either the claims, the outer cylinder limitation, or the necessary inner core. And it makes a substantial structural difference in the way the device is put together. It's not substantially the same if you're mounting. Well, we don't look at substantially the entire device, right? We look element by element for DOE. So the question isn't, is the device overall substantially different, but rather is that element operating in a substantially different way to perform the function? Right, so if we look at whether there's equivalence to the paint roller, the paint roller being defined as a cylinder with fabric wrapped around it, only look at that, and you compare that to the fabric, the answer is no, because the fabric by itself cannot perform the function of a paint roller. It cannot roll paint onto a surface without the rigid inner core. So looking purely at element to element, paint roller versus the fabric, the doctrinal equivalence could not apply. It's missing the key function. Yeah, but I guess, again, that's because you presume that it's impossible, almost, for two elements in the claim to be condensed into a single element in the accused device. So tell me how the function-way result test would differ in your mind if I were to ask you to focus on not the fabric itself, but the fabric mounted on the core and how that functions as a unitary structure. I'm not sure I understand that distinction, because we're comparing the doctrine of equivalence to the paint roller element. We're looking at what was construed as the paint roller to the fabric. Yes, and I'm saying why can't they argue that the accused device, the paint roller under the doctrine of equivalence, is, in your device, the paint roller mounted on the core. So it has a core as well as the fabric. Because I think then you're going back to what you just said we can't do, is we can't look at the device put together with its different parts combined. We have to look at it element by element. Is what you're saying is that the outer cylinder and the inner core of the paint roller can't be the same in the doctrine of equivalence, because one has to be mounted on the other. They have to be separate. That's correct. So the Qualitech takes issue with the court's construction of paint roller and argues that paint roller could mean just the fabric. But we begin with the admission that Qualitech makes, which is that the standard definition of a paint roller is, in fact, fabric with an inner core cylinder. So the district court correctly looked to see whether something in the patent defined that the paint roller being referred to here has a special definition, and it doesn't. In fact, the patent says any commercially available paint roller can be used with this mounting device. There's not a single piece of evidence in the record that shows that the term paint roller is ever being referred to as just a strip of fabric. Contrary to that, there are examples in the record, both from Qualitech's catalog and Linzer's catalog, where the term paint roller is being used precisely as the district court held, which is a cylinder surrounded by fabric. We also have the prior art that's referenced in the patent, which also has examples of the term paint roller being used consistent with the court's construction of a cylinder surrounded by fabric. And then there was also the two cases cited where two different federal courts in Wagner and Worcester Brush also found the meaning of a paint roller must be cylinder with fabric wrapped around it. Qualitech relies almost exclusively on its own owner who is also the inventor of the patent testimony as to what a paint roller means, but this court has repeatedly held that the testimony of the inventor is entitled to little or no consideration because it's typically just self-serving after-the-fact statements about what should have been put into the patent itself. On the issue of attorney's fees, it was obvious that the patent didn't have an outer cylinder. It's obvious that a strip of fabric itself could not be a paint roller or the equivalent of a paint roller because it doesn't perform the function of rolling paint onto a surface. And the other argument, which was the 605 patent, which wasn't even challenged by Qualitech, is a patent that requires notches on the rods of the cage. And here it wasn't even disputed that the accused product in this case, the twist to extend the RF-300, doesn't have notches on the cage. In its brief now, Qualitech tries to frame that issue as, well, it was a case of mistaken identity. We thought they sold the product, but it turned out they didn't and when we were told, we withdrew the claim. But, in fact, Linzer does sell that product. It's the RF-300 twist to extend that Qualitech accused of infringing the patent. That product just doesn't have notches and there's been no explanation as to why Qualitech sued Linzer accusing it of infringement of the 605 patent. Qualitech argues that the district court's attorney's fees argument was based on a wrong body of law, that we shouldn't have disconstructed the product or not. But the district court clearly held that it was Qualitech's insistence that the fabric could be a paint roller was, quote, dismally below the reasonableness threshold. So the district court clearly found that, one, the function of the fabric cannot serve the same function as a paint roller and, two, that it was that construction that was unreasonable. And that forms support for the exceptional case holding. Finally, Qualitech argues that there should be a reduction in fees because Linzer pursued an inequitable conduct defense, which Qualitech says was baseless. But nothing in the paper shows that that defense was baseless. It was dismissed on a motion to dismiss, but the motion, the court's order, aren't even included in the record and there's no evidence that that was objectively baseless. Unless the panel has other questions. Okay. Thank you, Mr. Linzer. Thank you very much. Mr. Berliner. Thank you. I just have a few points to make. Excuse me for a moment. The last point that was made with respect to damages, we have a brief on the questions, not damages, excuse me, on attorney's fees. We have a brief that's devoted to the question of attorney's fees, so a portion of it will rely upon that brief. However, my colleague here mentioned this device with notches on it. The fact of the matter is there's an awful lot of history that's involved with this, which has not even been brought up in this litigation because there's just no time. We have a motion to summary judgment and a quick rush to judgment on this matter. The fact of the matter is that we can have and we would prove in trial that they did sell the items with notches and they stopped when my client… Yeah, but that's not on the record. I know it's not on the record, but neither is what he's saying truly of record. It's a misleading statement. Now, he says, my colleague, that the definition of a paint roller requires you have a core, but if you look at A195 in the appendix, you have his definition, which is actually his insertion, and it says, a paint roller is a roller of absorbent material mounted on a handle. Nothing in that definition has anything to do with a core. It's cylindrical material mounted on a handle. Now, I get back to the definition of a roller. He seems to insist that this roller must have a core. I don't know where that comes from. It's not in the patent. It's not in the definition of a roller. The definition of a roller, again, is a cylindrical body for rolling over something to be spread out. Nothing in that has a core. Nothing in the patent says there's a core in a roller. Nothing in the claim says there's a core in a roller. Now, the patent refers to any commercially available roller. It must mean the fabric, because any commercial roller, if it had a core, could be anything. It could be a large roller you can paint the bond with. It's not going to be one of these mini rollers. If you say any conventional roller, the mini roller is not a conventional roller. Clearly, the word roller must mean the fabric, or else it could not be any conventional roller. It just doesn't make any sense to do that. The only way you can come to that conclusion that this claim has any meaning is that if the word roller means fabric. Now, if you want to accept that it has a core, clearly the fabric is the equivalent of the roller with a core. The fact that it's not a strip of fabric, if you take it apart, it's a strip of fabric. We're not dealing with a method claim. We're dealing with a structure, and that structure has a cylindrical fabric material surrounding a cylinder, which they call it a core, we call it a cylinder. It's identical. There's no difference between the two. Then it has this device inside which you can insert a handle. Under any way you want to interpret it, it seems to me that what you have is a clear infringement of the device. I don't think we even need to reach the question of attorney's fees because we believe that this court should find that the fabric is the equivalent of a roller with a core, and therefore every element of that claim is met. Thank you. Okay. Thank you, Mr. Berliner. The case is submitted. Thank you all.